UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MORENO, et al., | No. C 05-0034 PJH (JL) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT** |
| FIRE BARRIER, INC, ET AL., | **(Docket Number 14)** |
| Defendants. | |

**Introduction**

The district court (Hon. Phyllis J. Hamilton) referred Plaintiff's motion for default judgment under Rule 55(b) Federal Rules of Civil Procedure to this Court for Report and Recommendation as provided by 28 U.S.C. § 636(b) and Civil Local Rule 72.

This Court considered the record in this case and recommends the district court grant default judgment as to the mandatory injunction requiring Defendants to submit to an audit. This Court further recommends that the district court take Plaintiffs' First Claim for Relief, requesting money damages, interest, and attorney fees, under submission until the audit is complete, so that the exact dollar amounts can be calculated. Given that there are discrepancies in some of the calculations of damages, and that some claims for damages lack evidentiary support, and most appear to be subject to change based on the findings of

the audit, Plaintiffs should re-submit on all damages requested, after completion of the audit.

**Factual Background**

On November 24, 1992 Defendants Fire Barrier, Inc. and its owner Lorraine E. Graves entered into a written collective bargaining agreement with the Northern California District Council of Laborers entitled "Memorandum Agreement." (Exhibit A to Complaint). Defendants agreed to be bound to by all provisions of the Laborers' Master Agreement for Northern California ("Master Agreement"). (Exhibit A to Declaration of John Hagan). The Memorandum Agreement and Master Agreement govern wages, hours, conditions of employment, and trust fund agreements, including the Laborers Health and Welfare Trust Fund for Northern California, Laborers Vacation-Holiday Trust Fund for Northern California, Laborers Pension Trust Fund for Northern California, and Laborers Training and Retraining Trust Fund for Northern California ("Trust Funds"). (Exhibits B, C, D, and E to Declaration of Andrea J. Kirkpatrick).

Defendants are required to pay contributions into each trust fund in regular monthly installments by the 15th day of the month immediately succeeding the month for which contributions are due. If any payments are not paid in full on or before the 25th day of the month for which contributions are due, Defendants would pay as liquidated damages, and not as a penalty, the amounts specified in the Trust Agreements and the collective bargaining agreements. If any suit regarding these contributions arises Defendants agreed to pay into the Trust Funds the attorney fees, costs, and all other expenses incurred.

Defendants additionally agreed to allow Plaintiffs access to their financial records and books so that Plaintiffs could accurately determine the money owed to the Trust Funds. Plaintiffs in this case are Jose Moreno, the Chairman, and Larry Totten, the Co-Chairman, of the Board of Trustees of the Trust Funds. Plaintiffs are acting under their duties as Chairman and Co-Chairman of the Board of Trustees to ensure that employers who are signatories of the collective bargaining agreements comply with the terms.

Plaintiffs contends that within the last four years Defendants materially breached the agreement by failing to account for and pay contributions to the Trust Funds for each hour worked by covered labor personnel. Plaintiffs contend they have not materially breached the agreement.

## Procedural Background

Default was entered against Defendants Fire Barrier and Lorraine E. Graves. Plaintiffs' motion for default judgment was referred by the District Court (Hon. Phyllis J. Hamilton) as provided by 28 U.S.C. § 636(b) Civil Local Rule 72 for Report and Recommendation. Jurisdiction is conferred by 29 U.S.C. § 185 (§ 301 of the Labor Management Relations Act of 1947, as amended (LMRA)) and 29 U.S.C. §§ 1132(a)(3) and 1132(e)(1) ((§§502(a)(3) and 502(e)(1)) of the Employee Retirement Income Security Act of 1974, as amended, (ERISA). Venue is proper in that contributions are due and payable in the Northern District of California under ERISA § 502(e)(2), 29 U.S.C. §1132(e)(2).

The Trust Funds are organized pursuant to the provisions of § 302(c)(5) and § 302(c)(6) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. §186(c)(5) and § 186(c)(6). Each of the Trust Funds is an express trust created by written Trust Agreements subject to and pursuant to § 302 of the LMRA, 29 U.S.C. § 186, and a multi-employer benefit plan within the meaning of ERISA §§ 3,4, 29 U.S.C. §§ 1002, 1003.

The Trust Funds are employee benefit plans created by written trust agreements subject to and pursuant to § 502(d)(1) and §§ 3(3), 3(37) of ERISA, 29 U.S.C. § 1002(3)(37).

The Trust Funds were established through collective bargaining agreements between the Northern California District Council of Laborers and an employer association representing construction industry employers doing business in Northern California. Each of the Trust Funds is a third party beneficiary of the collective bargaining agreements.

The Trust Funds provide a variety of benefits to laborers, retired laborers and other covered employees on whose behalf contributions are made pursuant to the collective bargaining agreements.

Defendant Lorraine E. Graves is an individual who owns, operates, and controls Defendant Fire Barrier, Inc., a business entity with its principal place of business in San Francisco, California. Defendant Fire Barrier, Inc., is and has been an employer within the meaning of ERISA § 3(5) and § 515, 29 U.S.C. §§ 1002(5), 1145, and an employer affecting industry within the meaning of LMRA § 301, 29 U.S.C. §185. Together, Defendants Fire Barrier, Inc., and Lorraine E. Graves constitute a single employer.

**Legal Argument**

This action is based on Defendant's alleged breach of multiple collective bargaining agreements.

Plaintiffs ask the Court to award unpaid contributions, interest, and liquidated damages in their First Claim for Relief, pursuant to § 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and attorneys' fees and costs incurred in this action. Plaintiffs ask the Court to enter judgment in the total amount of $20,349.51 in delinquent contributions, interest, liquidated damages, costs and attorneys' fees. (Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Default Judgment at 4 ("P & A")). Plaintiffs request $11,250.94 in unaudited principal delinquencies. (Declaration of James P. Watson at 2, Exhibit B to Declaration of John Hagan). Plaintiffs request $2,829.69 in liquidated damages. (Watson Dec. at 2, Exhibit D to Hagan Dec.) Plaintiffs incurred costs in the sum of $454.56, (Exhibit A to Watson Dec.), and attorneys' fees in the amount of $2,907.06 through May 10, 2005. Plaintiffs billed these fees at the reduced rate of $225.00 per hour. (Exhibit B to Watson Dec.). This is an incorrect total for the attorneys' fees, which is discussed in detail below. Pursuant to § 502(g)(2) of ERISA Plaintiffs request $2,907.06 in interest on unpaid funds through March 31, 2005. (Watson Dec. at 2). Additionally, in Plaintiffs' Amended Complaint they request $13,543.37 in "previously audited delinquent contributions" yet make no further reference to this sum anywhere in their papers.

In the Second Claim for Relief Plaintiffs request a mandatory injunction. Specifically, they seek to audit Defendant's financial records and books pursuant to the terms of the Memorandum Agreement and Master Agreement.

### Legal Analysis

Plaintiffs initiated this action January 3, 2005. After Defendants did not respond to the properly served Summons and Complaint the Clerk entered their Default April 12, 2005. Plaintiffs now request that this Court enter default judgment against Defendants. Once the Clerk enters a default against a party the court may then enter default judgment against them, upon a proper showing. Fed. R. Civ. P. 55(b)(2).

By defaulting Defendants admit to the well-pleaded factual allegations of the complaint except for the amount of damages. Fed. Rule Civ. P. 8(d). *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987), *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). Defendants admit that they breached their collective bargaining agreement by failing to make the required contributions to the Trust Funds for each hour worked by covered personnel.

Default judgment is not mandatory. Rather, the district court has discretion to enter default judgment against a defendant. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) Factors the court may consider to determine if default judgment is appropriate include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

### I. Plaintiffs' Request for Injunctive Relief

By defaulting, Defendants admit to the collective bargaining terms outlined in the Master Agreement. Under the Master Agreement, which expressly incorporates the Trust Agreements, Defendants are required to allow Plaintiffs access to their books and records

so that Plaintiffs may determine the amount Defendants owe to the Trust Funds. The written Trust Agreements provide that Defendants must allow access for an auditor of Plaintiffs' choosing. Defendants have thus far refused to allow Plaintiffs access.

Plaintiffs seek to examine and copy, on Defendants' premises during business hours, any books, papers, and reports of Defendants relevant to enforcement of the collective bargaining agreement. These include, but are not limited to: California Quarterly Report of Wages, Form DE-6; Federal Tax Forms W-3/W-2 and 1069/1099; Payroll Registers/Journals; Individual Earnings Records; Source Records, including time cards and time card summaries for all employees; contribution reports for all trust funds; worker's compensation reports; certified payroll reports; personnel records indicating job classification and hire/termination dates; cash disbursement journal; vendor invoices; copies of subcontract agreements; cash receipts journal; general ledger; job costs records; records of related entities; and any other books and records necessary to complete the auditor's determination or provide additional explanation. (P & A at 5).

According to Plaintiffs, access to Defendants' books and records is the only way Plaintiffs will be able to accurately determine the amount owed by Defendants. The *Eitel* factors weigh strongly in favor of granting Default Judgment on the issue of injunctive relief. Plaintiffs properly allege a meritorious claim against Defendants based on a breach of the terms of the contract entered into between them. Defendants resumed payments to the Trusts indicating that they continue in business, and would be able to respond to this suit, making it unlikely their default is due to excusable neglect. Most important, it appears Plaintiffs would have no recourse absent injunctive relief. Potential prejudice to the Plaintiffs strongly favors granting Default Judgment when, as here, Plaintiffs appears to have no recourse absent court intervention. *Pepsico, Inc. V. Cal. Sec. Cans*, 238 F. Supp.2d 1172, 1177 (C.D. Cal. 2002). Since Defendants are refusing access to their records, and an examination of the records is the only way to determine the amount owed, Defendants should be ordered to submit to an audit.

## II. Plaintiffs' Request for Monetary Damages

Entry of default does not include the amount of money damages owed. Fed. Rule Civ. P. 8(d). *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987), *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). Plaintiffs request amounts owed from unpaid contributions, plus liquidated damages, interest and attorney fees. Given that the audit is designed to determine the amount of money owed to the Trust Funds, the court's decision regarding money damages and attorney fees should be postponed until the audit is completed.

At this point Plaintiffs make several requests for specific damages despite the absence of a comprehensive audit. As to these requests, there are some discrepancies in the amounts of damages, and no evidentiary support for some claims. It is unclear how these damages will be affected by a comprehensive audit.

Plaintiffs request $13,543.37 in "previously audited delinquent contributions." (Amended Complaint at 4) and accrued interest and liquidated damages. Plaintiffs only request this amount in the Amended Complaint and do not make any reference to it in the P & A for Default Judgment. Plaintiffs submit no evidence from which this Court can conclude Defendants are in fact delinquent in this amount. Plaintiffs provide no accounting of what interest or liquidated damages are owed on this debt. It is unclear whether or not Plaintiffs are in fact requesting this amount.

Plaintiffs request $11,250.94 in delinquent trust fund contributions based on the period of time the audit will cover. Though Plaintiffs submit evidence to support this claim and the amount (Exhibits B and C to Hagan Dec.) it is unclear if this total will change after completion of an audit.

Plaintiffs state that interest in the amount of $2,907.06 was calculated by "reviewing the trust fund contribution reports for Fire Barrier, Inc., the delinquency report produced internally at the Laborers Trust Fund Administrative Office, and the underlying hourly reports." (Watson Decl. at 2) Plaintiffs submit no mathematical calculation which would allow the Court to conclude this is the correct amount. Evidence, such as the above mentioned reports, is necessary to support this calculation.

It appears Plaintiffs miscalculated their attorneys' fees and costs. Plaintiffs request $454.56 in costs and $2,907.06 in attorneys' fees. (Watson Decl. at 2). The $454.56 correctly reflects the costs on the Detail Cost Transaction File List submitted by Plaintiffs. (Exhibit A to Watson Dec.). As to fees, Plaintiffs' Detail Fee Transaction File List shows a total of $2,452.50. (Exhibit B to Watson Dec.). The evidence supports *total* attorney fees and costs in the amount of $2,907.06 ($454.56 + $2,452.50). Plaintiffs do not state if they will be requesting further attorney fees and costs based on the continuation of this case during the audit.

Plaintiffs' papers present the unlikely coincidence that the attorneys' fees and the interest are the exact same amount of $2,907.06.

The Master Agreement states that "[a]ll delinquent contributions shall bear simple interest at the rate of one and one-half percent (1.5%) per month until receipt of payment. Subject to accounting verification, liquidated damages shall be assessed on delinquent contributions at a flat rate of one hundred and fifty dollars ($150.00) per month to reflect the internal administrative costs incurred by the trust administrator in monitoring and tracking such late contributions." (Master Agreement Section 28A). Plaintiffs submit evidence to support the request of $2,829.69 in liquidated damages (Exhibit D and E to Hagan Dec.). As with the other items it is unclear if the amount of these damages will change after completion of a comprehensive audit.

## Conclusion

This Court considered the record in this case and recommends the district court grant default judgment as to the mandatory injunction requiring Defendants to submit to an audit. Defendants breached the terms of the collective bargaining agreement and a comprehensive audit is the only way that Plaintiffs will be able to determine accurately the amount of damages owed.

This Court further recommends that the district court take under submission Plaintiffs' claims for damages. The totals are likely to change after the audit. Some of the current damages calculations lack evidentiary support and the attorneys' fees request is apparently miscalculated. Since a Defendant by default does not admit to damages, it is

imperative that all amounts be properly calculated and supported by evidence. Once the audit is complete Plaintiffs should re-submit all damages claims with appropriate evidentiary support.

Respectfully submitted.

DATED: December 29, 2005

JAMES LARSON
Chief United States Magistrate Judge